1816.

Prentiss & Carter
vs
Gray

by the appellants' counsel, that the validity of this second sale cannot be controverted by the defendant, (*Harding*,) that being a question solely between the trustees, and the heirs. A slight examination will shew that this doctrine is not tenable. Suppose that the heirs, (as they may,) shall in future determine that this purchase by the trustee is not valid, the result is, that the second sale to the trustee is vacated, the first sale in force, and the purchaser, (the defendant,) liable under his contract—if it should be supposed to be valid, either as good, being by auction, or confirmed by taking possession—in which case the defendant would be liable for the purchase money; and (if this judgment should be reversed and he be compelled to pay the forfeiture,) be obliged also to pay the penalty. In this branch of the enquiry the question is as to the validity of the second sale—Because, even supposing the first sale not affected by the statute, yet the plaintiffs cannot recover if the second sale is not good, the present suit being for a forfeiture for not complying with the first sale.

3. This question depends on the second point, because if the second sale is not valid there is no consideration.

---

JUNE.

PRENTISS & CARTER, Garn. of STORY vs. GRAY.

Where the certificate of the clerk to an affidavit, on which a warrant was founded directing an attachment to issue, stated that W D "is one of the judges of the court of common pleas for the county of *Suffolk*, in the commonwealth of *Massachusetts*, duly qualified and acting in said capacity, and that full faith and credit ought to be given to his legal attestations in court and out. in his said capicity"—*Held*, that as it did not appear by the certificate of the clerk that the judge had authority to administer an oath, as directed by the act of 1795, *ch* 56, *s*. 2, the proceedings were defective.
Whether or not the following are such legal defects in the affidavit, and warrant directing an attachment to issue, as to defeat the attachment? 1. The affidavit did not allege that the plaintiff was a citizen of the state of *Massachusetts*, or of any particular state, but that he was of *Boston*, merchant, a citizen of the *United States*. 2. The plaintiff did not swear that he produced the note on which the debt was founded, but it was merely recited by the judge that the note was produced. 3. The warrant of R G, on which the attachment issued, did not state, nor was it set forth, that he was a justice of the peace.

APPEAL from *Baltimore* County Court. This was an attachment on warrant, issued the 21st of January 1811.

The affidavit upon which the warrant for issuing the attachment was founded, is in these words: "Commonwealth of *Massachusetts, Suffolk* county, sc. Be it remembered, that on this 15th day of January, in the year 1811, before the subscriber, judge of the court of common pleas in and for the county of *Suffolk,* in the commonwealth aforesaid, personally appears *William Gray* esquire, of *Boston*, in the said county, merchant, and makes oath on the Holy Evangelists of Almighty God, that *Augustus Story,* not being a citizen of *Maryland,* and not residing therein, is *bona fide* indebted to him the said *William Gray,* of *Boston* aforesaid, merchant, (he being a citizen of the *United States,*) in the sum of fifteen thousand dollars of the lawful money of the *United States,* over and above all discounts. And the said *William Gray* at the same time producing to the subscriber the original note, which is hereunto annexed, subscribed by *Bradstreet* and *Story,* promising to pay the same sum to *Augustus Story,* or to his order, and by the said *Augustus Story* endorsed, for a valuable consideration, to the said *William Gray,* whereby the said *Augustus Story* became so indebted as aforesaid to the said *William Gray.* And the said *William Gray* also maketh oath, that he doth know that the said *Augustus Story* is not a citizen of the state of *Maryland,* and that he doth not reside therein. Sworn before me, *Wm. Donnison,* judge of the court of Common Pleas." Then follows a certificate by the clerk of the Court of Common Pleas for *Suffolk* county, under the seal of the court, certifying "that the honourable *William Donnison* is one of the judges of the court of common pleas for the county of *Suffolk,* in the commonwealth of *Massachusetts,* duly qualified, and acting in said capacity; and that full faith and credit ought to be given to his legal attestations in court and out, in his said capacity." The promissory note referred to in the affidavit was annexed. The warrant was dated the 21st of January 1811, and under the hand and seal of *Robert Gorsuch.* directed to the clerk of *Baltimore* county court, requesting him to file the affidavit and annexed promissory note, and to issue an attachment, &c. The attachment was issued on the 21st of January 1811, by the clerk of *Baltimore* county court, reciting the warrant from *Robert Gorsuch,* esquire, one of the justices of the peace for *Baltimore* county, directed to the sheriff of *Baltimore* county, and commanding him to attach the lands, &c. of the said *Augustus Story,* to the value of $15.000, according to the act of assembly, &c, and *make known* to the garnishees, &c. A *capias ad respondendum* also issued on the 21st January 1811; and a short note was filed, and copy sent, with the writ. At March term 1811, the sheriff returned the writ of attachment endorsed, "Laid in the hands of *John Miller Prentiss* and *Robert E. Carter,* trading under the firm of *Prentiss & Carter,* the 22d January 1811, in the presence of *Ashael Hussey* and *John Stevenson—Wm. Merryman* sheriff." The capias was returned endorsed, "N. E." The garnishees appear-

ed and defended, &c. At March term 1812, the plaintiff's declaration was filed, and the garnishees pleaded *non assumpsit* by *Augustus Story*, and *nulla bona*; to which there were general replications and issues joined. *Verdicts* for the plaintiff, damages assessed to $16,297 50, upon the first issue, and goods and chattels in the garnishees' hands to the value of $4,338 75, upon the second issue. The verdicts were taken, subject to the opinion of the court, on a statement of facts, and subject also to all objections that might be legally made, either to the form or substance of the attachment proceedings in case no verdict had been rendered. The facts stated were these.—On the 26th of January, 1811, *Bond* and *Prentiss* obtained an attachment against *Story*, which was laid in the hands of the present garnishees, as also in the hands of *Thomas Marean*, another garnishee of *Story*, and returned to the same term of the court as the attachment in the present case. There were funds and effects belonging to *Story* in the hands of the present garnishees, at the time of the verdict, to the amount of 4,044 49, and at the same time there were funds and effects belonging to *Story*, in the hands of *Marean*, to the amount of $3,540 43. The questions submitted to the court were, 1. Whether the plaintiff was entitled to recover the funds of *Story*, in the hands of the present garnishees? If so, then judgment was to be entered on the verdict for $4,044 49. And 2d. Whether he was entitled to recover, in addition to the funds aforesaid, the funds of *Story* in the hands of *Marean*, in the present suit? If so, then judgment to be entered on the verdict for $7,584 92. It was admitted that the judge, before whom the affidavit in the attachment proceedings was made, was not, as a judge of the court of common pleas, competent, by the constitution and laws of *Massachusetts*, to administer an oath out of court. But that he was at the time duly commissioned, and acting as a justice of the peace for the county of *Suffolk*, and authorized as such, to administer an oath out of court. A *pro forma* judgment was entered on the case stated for the plaintiff, and condemnation on the verdict for $7,584 92, and costs. From that judgment the garnishees appealed to this court.

The cause was argued before BUCHANAN, EARLE, JOHNSON, and MARTIN, J.

*Williams*, for the Appellants, contended—1. That upon the case stated, the appellee was not entitled to recover the money or property of *Story*, either in the hands of the appellants, or of *Marean*, because the proceedings, on which the writ of attachment issued, were *defective*. 2. That he was not entitled to recover the property of *Story* in the hands of *Marean*, because his attachment had never been laid in *Marean's* hands, even if his proceedings were sufficiently regular to bind the property in the hands of the appellants. As to the *first point*—The appellee's proceed-

ings are defective, inasmuch as, 1st. The affidavit does not allege that the appellee was a citizen of the state of *Massachusetts*, or of any particular state, but only that he was a citizen of the *United States*. The *first* section of the act of 1795, *ch.* 56, enables only citizens of some one of the *United States* to have the benefit of the act. He contended that there were citizens of the *U. S.* who did not belong to any state; as those who live in the several territories, and could not, under this law, issue an attachment, consequently it was not clear by the affidavit that the appellee was entitled to be a plaintiff in attachment. 3. The affidavit is defective in this, that the affirmant does not swear that he produces the note on which the debt is foundded; but it is merely recited by the judge that the note was produced. 3. The warrant of *Robert Gorsuch*, on which the writ of attachment issued, does not state, nor is it set forth in the proceedings, that he was a justice of the peace; consequently it does not appear that the clerk of the county court was authorised to issue the writ. He referred to *Jackson vs. Stiles. Coleman & Caine's Cases*, 468, where the supreme court of *New York* decided, that the *jurats* of affidavits must be signed by the judges before whom taken, with the addition of their official descriptions. 4. The certificate of the clerk, which is annexed to the affidavit, is defective, as it only certifies that the judge, who administered the oath, was a judge, and that full faith and credit ought to be given to his acts in and out of court; without certifying *that he had authority to administer such oath*, which is required by the *second* section of the act of 1795, *ch.* 56, and without which the affidavit cannot be good and sufficient evidence. 1st. Admitting, for the sake of argument, that the expressions in the certificate furnish grounds for implying that the judge had the authority to administer the oath, yet the court are not at liberty to make the inference under the provisions of the above section. In *Morris vs. Ludlam*, 2 *H. Blk. Rep.* 362, in a plea set up by a garnishee, who had been obliged to pay money to the plaintiff in attachment under the custom of *London*, the omission to state that the debt was due in the city of *London*, although necessarily to be implied, subjected him to a re-payment to his original creditor. Again, the constitution and judiciary system of the *U. S.* provide that the circuit courts of the *U. S.* shall have jurisdiction (among others) of cases in which the plaintiff and defendant are citizens of different states, or one of the parties is an alien. The courts of the *U. S.* have decided that this jurisdiction must appear upon the face of the proceedings. And in *Bingham vs. Cabot*, 3 *Dall. Rep.* 382, in which case the declaration set forth that the plaintiffs were of *Boston*, in the district of *Massachusetts*, the supreme court of the *U. S.* decided that it was not sufficiently shown that the plaintiffs were citizens of *Massachusetts*, although they were stated to be of *Boston*, &c. and though even had they been aliens, it would have been sufficient to

1816.

Prentiss & Carter
vs
Gray

1816.

Prentiss & Carter
vs
Gray

give the jurisdiction. In *Turner vs. Enrille*, 4 *Dall. Rep.* 7, the declaration stated that the plaintiff was Marquis *de Caso Enrille*, of ——— Island, and the defendants were of *Newbern*, in *North Carolina*, the supreme court decided that it was not sufficiently averred that the plaintiff was an alien, or that the defendants were citizens of *North Carolina*. In *Abercrombie vs. Dupuis*, 1 *Cranch*, 343, the declaration represented the plaintiffs to reside in the state of *Kentucky*, and the defendants in the state of *Georgia*, yet the supreme court decided there was no sufficient averment of citizenship. In *Hodgson vs. Bowerbank*, 5 *Cranch*, 303, the declaration stated the defendants to be merchants of the district of *Maryland*, and yet the court determined that the omission of the word *citizens* was a fatal defect, and that it was not enough to state them to be of *Maryland*. In *Brookes vs. Hunt, Coleman and Caine's Cases*, 468, an omission of that which was easily to be inferred, was held to be fatal in an affidavit. The courts in this state have decided, that the omission by the justices who take acknowledgments of deeds, to certify that a *feme covert*, who comes before them, "makes her acknowledgment without being induced thereto by fear or threats of ill usage of her husband, or fear of his displeasure," is fatal, although they certify that the acknowledgment was made *willingly and freely*. Although it is impossible that a *feme covert* could make an acknowledgment of a relinquishment of her interest in an estate, *willingly and freely*, if it were made under a fear or threat of ill usage from her husband, or fear of his displeasure. In *Smoot's Adm'r. vs. Bunbury's Ex'r.* 1 *Harr. & Johns.* 136, it was decided, that certain words in a probate prescribed by law, being omitted, the probate was deemed to be defective. The provincial court quashed an attachment under the act of 1729, *ch.* 8, in *Thompson vs. Towson*, 1 *Harr and M'Hen.* 504, on the ground that the affidavit did not state that the "debt was *bona fide* due," although it set forth that no part of the money had been paid more than credit given, &c. It was also there contended, that the magistrate's warrant was defective, because he certified that the debt was due *as appeared by a bond*, when he should have certified it to be due positively, without reference. These several cases show, that the omission to set forth expressly, that which is required to appear by the proceedings, is fatally defective, although enough is stated, from which that which is so material may, or even must be, irresistibly inferred. In the authorities referred to it will be found, that the provisions of the law, which require these particular and special averments, are far less explicit and less precise than the expressions in the *second* section of the act of 1795. *ch.* 56, with which this certificate purports to comply. This section declares that the affidavit shall not be good and sufficient evidence, unless the fact is expressly averred that the judge had authority to administer such oath. It excludes any other evidence of such authority, than the certificate.

2d. But there is not enough set forth in this certificate, from which it may be inferred that the judge had authority to administer the oath. The certificate merely states that the judge was a judge of the court of common pleas of *Massachusetts*, and that full faith and credit ought to be given to his attestations in and out of court. This is only certifying that he was a judge, and *as such* full faith should be given to his attestations. But this statement of his official character, and of the credence due to his official acts, does not come up to the provisions of the *second* section of the act of 1795, *ch.* 56, which require that the judge should be of that character, and possessed of those peculiar powers, which entitle him to administer civil oaths out of court. The whole amount of the certificate is, that the person before whom the affidavit was made, was a judge; and unless it can be shown that it is essentially inherent in all judges to be clothed *ex virtuti officii* with authority to administer civil oaths out of court, there is not sufficient grounds even for inferring that this judge was authorised to administer this oath. Now, it is not incidental to all judges to have this power, nor do they exercise this power, but in virtue of a special authority, conferred from time to time by law. Neither does *Coke, Blackstone, Comyn* or *Bacon,* in enumerating the powers and authorities of a judge, include that of administering civil oaths out of court, as appertaining to their office. The judges of the court of the King's Bench, having criminal jurisdiction, have authority to administer oaths relative to public offences; but even this power is not possessed by the judges of the court of common pleas. And the judge who administered this oath, in this case, is of the court of common pleas, which court has no criminal jurisdiction in *Massachusetts.* Courts of justice have essentially, and as appertaining to their very nature, authority to administer oaths in all cases of which they have jurisdiction. Justices of the peace are supposed more peculiarly to have authority to administer oaths in all cases; but it does not appear by this certificate that this judge was a justice of the peace, unless it can be shown that the character of a justice of the peace appertains to his office of a judge. This, however, cannot be admitted, for it does not appear by the books that it always, or even usually, appertains to the office of a judge to be a justice of the peace. The judges of the King's Bench are *ex officio* justices of the peace, but the judges of the court of common pleas are not; and it is in the highest degree probable, that this judge, who belongs to the court of common pleas of *Massachusetts*, which resembles the court of common pleas in *England*, is not a justice of the peace. There are many judges of courts in this state who are not justices of the peace, and who undoubtedly have not authority to administer oaths out of court—as justices of the levy court—judges of the orphans court, and judges of the criminal court, as such. These judges frequently, oftener than otherwise,

have the additional character of justice of the peace united to them by a separate commission. And to satisfy the court, in cases of attachments, that the judge had authority to administer an oath, the law requires that the certificate of some person belonging to classes therein designated, and who are in a situation to know the extent of the powers of the judges of their states, should set forth—not that he is a judge, for that is not required, and is sufficiently shown by the judge himself—but that he is authorised to administer such oaths. The certificate is to be the only evidence, all other kinds of evidence are excluded. In this certificate nothing more can be extracted from it, than that the judge is of the official character he professes to be. It will be found, by reference to the acts of all legislatures, when they prescribe the taking of oaths, that they specially designate the persons or officers before whom they are to be taken. This would be a useless provision, if there were officers to whom it officially appertained to administer all oaths. In 1 *Jacob's L. D.* tit. *Affidavit*, 61, an affidavit is defined to be "an oath in writing, sworn before some person who hath authority to administer such oath." It does not say, sworn before a judge or justice, or other particular officer. The courts in *England* are authorised to appoint commissioners to take affidavits in causes depending before them; and if they are not taken before authorised commissioners, they are not valid. From these considerations, and taking into view the peculiar wording of the *second* section of the act of 1795, *ch.* 56, and the expressions of the certificate, on which this discussion turns, it must be concluded, that there is not sufficient grounds for inferring that the judge had the authority to administer the oath in this case, even if the court were at liberty to be satisfied with a mere inference.

The *second point.* The appellee was not entitled to recover the property of *Story* in *Marean's* hands, &c. This position was abandoned by the counsel for the appellee, who considered the objection a valid one.

*Winder,* on the same side, referred to *Hepburn vs. Ellzey,* 2 *Cranch* 445, where it was held, that a citizen of the district of *Columbia* was not a citizen of a *state* within the meaning of the constitution; and *The Corporation of New Orleans vs. Winter.* 1 *Wheat.* 91, where it was determined that a citizen of a *territory* could not sue a citizen of a *state* in the courts of the *U. S.*

*Martin* and *W. Dorsey,* for the Appellee. 1. The oath taken by the appellee, as stated in the affidavit, excludes the idea of his being a foreigner, as he is stated to be a citizen of the *United States.* His being stated to be of *Boston,* in the county of *Suffolk,* shows by necessary inference that he is a citizen of *Massachusetts.* The cases cited arose under the constitution and laws of the *U S.* as to the question of jurisdiction, and are not applicable to a case

1816.

Prentiss & Carter
vs
Gray

like the present. To show that the affidavit was sufficient they referred to *Campbell vs. Morris, 3 Harr. & M'Hen.* 535. 2. It is not required by the act that the parry should swear that he produces the note, &c. upon which the debt is founded. He is only to swear to the amount due to him, and to produce to the judge the notes, &c. who annexes it to the affidavit. 3. The objection that *Gorsuch* was not a justice of the peace is obviated, because it is certified by the clerk in the caption of his record, and also in the attachment, that he was a justice of the peace, and that is as sufficient evidence of that fact, as if he had himself stated that he was a justice of the peace. *Brydon vs. Taylor, 2 Harr. & Johns.* 296. *Hall vs. Gittings' Lessee, Ibid* 383. *Lawrence et ux. Lessee vs. Heister et al. 3 Harr. & Johns, 343,* 4. The act very strangely requires that the clerk should certify that the judge had authority to administer an oath, without permitting the certificate of the judge to prove itself. The clerk, to follow the words of the act, must use the word *such,* and that would make his certificate nonsense. It is admitted in the statement that *Donnison,* the judge in this case, was authorised to administer an oath; and it is to be presumed that he had authority to administer it, or he would not have done so. The clerk certifies that he was a judge, and that full faith and credit ought to be given to his acts. If he had no authority to administer an oath, the clerk would not have said that full faith and credit ought to be given to his acts.

*Winder,* in reply. The appellee is entitled to strict justice only. He proceeded under an act of assembly giving special privileges to particular persons, and he must show that he comes strictly within its provisions. 1. The appellee's being stated to be of *Boston,* &c. and the affidavit being made in the county of *Suffolk,* in *Massachusetts,* does not necessarily imply that he was a citizen of *Massachusetts.* The expressions in the constitution of the *U. S.* upon which the cases cited for the appellants were decided, are not so strong as those in our act of assembly. A citizen of the district of *Columbia,* or of any of the territories, could not obtain an attachment under the act of 1795, *ch.* 56. The appellee might be of *Boston,* merchant, and yet not a citizen of *Massachusetts.* In *Campbell vs. Morris,* the court only acted upon the points raised, and there was no objection made to the form of the affidavit by the counsel. 2. The act says, and *at the same time producing* the cause of action, and it should have been asserted by the appellee that the note produced is the one by which the defendant was indebted to him. Here the verity of the note is simply the assertion of the judge, and not that of the appellee. 3. The appellee's counsel seem to think this objection is fatal, unless they can bring themselves within the law, and they attempt to do so by saying the certificate of the clerk supplies the defect. The act says, the warrant must be granted by a justice of the peace, &c. *in his character*

1816.

Green
vs
M'Clellan

of justice, &c. The question is not whether *Gorsuch* is a justice of the peace, but whether he ˙did the act as such. The recital by the clerk ˙is unfounded from any thing that came from *Gorsuch.* The clerk might know that he was a justice, but he could not know that he had done the act in his character as such. The recital in the record did not exist when the attachment issued or was returned; and the recital in the attachment is unsupported by any thing appearing, and cannot aid the defect. The clerk's issuing the writ, and stating *Gorsuch* to be a justice, could not make his illegal act valid. He may have sent his resignation to the executive, of which the clerk had no knowledge, and may not have acted as a justice when he issued the warrant. If he had stated himself to be a justice, then it might be inferred he was what he stated himself to be. 4. No other evidence, but the certificate of the clerk, that the judge had authority to administer the oath, can be received. The act is imperative that it shall not be evidence unless there be a certificate of the clerk that the judge had authority to administer the oath. No admission of the parties can cure the defect. The certificate by the clerk is only that he is a judge, and that to his legal attestations due faith and credit were to be given. He does not certify that the particular act was a legal one. The legal acts which he certified were not those under our laws, but those under their own laws, when he acted as judge of that court of which the clerk certified he was a judge. The incident of administering an oath does not necessarily follow the office of a judge. It is specially given under particular acts of the legislature.

THE COURT stated, that as it did not appear by the certificate of the clerk of the court of common pleas for *Suffolk* county, in the state of *Massachusetts*, that the judge, before whom the affidavit to obtain the attachment was made, had authority to administer an oath, the proceedings were defective. The other points raised by the counsel were not decided by the court.

JUDGMENT REVERSED.